Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9439 | **DATE** | 1/30/2003 |
| **CASE TITLE** | AMERICAN FOOD & VENDING vs. UNITED PARCEL SERVICE | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Status hearing held. Plaintiff's motion to compel discovery is withdrawn [7-1]. Preliminary injunction hearing is set for 4/15/03 at 10:30 a.m. Enter Memorandum Opinion And Order. UPS's motion to dismiss is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 3 1 2003 | 9 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| LG | courtroom deputy's initials | | | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

JAN 3 1 2003

AMERICAN FOOD & VENDING CORPORATION, )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )     No. 02 C 9439
                                     )
UNITED PARCEL SERVICE OASIS SUPPLY   )     Judge John W. Darrah
CORPORATION,                         )
                                     )
        Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff, American Food & Vending Corporation ("American"), filed a Verified

Complaint for Injunctive and Other Relief ("Complaint") in the Circuit Court of Cook County,

seeking injunctive relief for Defendant's, United Parcel Service Oasis Supply Corporation's

("UPS"), breach of contract.  Subsequently, the case was removed to federal court.  Presently

pending before this Court is UPS's Motion to Dismiss.

A reading of the Complaint supports the following summary of the alleged conduct of the

parties.

On January 8, 2002, UPS and American entered into a seven-year Food and Vending

Service Agreement ("Agreement") wherein American agreed to provide UPS all café, catering,

office, coffee, bottled water, and vending services to UPS employees at its Hodgkins, Illinois

distribution facility ("Facility").  Pursuant to the Agreement, American agreed to install, service,

and maintain vending machines in the Facility.

In April 2002, American initiated its service operations under the Agreement at the

Facility.  American invested approximately $140,000 in labor, travel, repair, shipping,

equipment, recruiting, advertising, signage, permits, and fees to set up the operations. American also made an additional capital contribution of $485,000 for new equipment for the Facility. Since April 2002, American has sold more than $1.4 million in vending machine products. In addition, the Facility has generated more than $1.5 million in sales in the first seven months of operation. During these seven months of operation, UPS personnel made only a limited number of oral complaints about minor problems in the food service or vending operation.

On October 3, 2002, Tom Volta ("Volta"), the manager of Human Resources for UPS, forwarded a letter of termination of the Agreement to American. The letter informed American that UPS was terminating the Agreement effective January 1, 2003. The letter indicated that the basis of the termination was substantial violations of Section II of the Agreement, which included: theft, food poisoning, inadequate water distribution, selling out-of-date food, serving undercooked and/or spoiled food, and repeated failure to provide proper supplies.

On October 9, 2002, American responded to the October 3 letter, claiming that it was unaware of any substantial violations of the Agreement. American further warned UPS that it would seek legal action if UPS continued in its effort to terminate the Agreement. American urged UPS to utilize the dispute resolution procedures in the Agreement and pledged to work with UPS to correct whatever problems existed.

On November 11, 2002, after receipt of the October 9 letter, UPS again informed American, during a telephone conversation, that UPS intended to terminate the Agreement on January 1, 2003. UPS also offered to purchase American's equipment. During the telephone conversation, Volta acknowledged that he had instructed his personnel not to advise American of any problems UPS now claimed it had experienced. Shortly after this conversation, American

received an inquiry from Aramark Corporation offering to buy equipment in anticipation that it would be taking over the vending and food services American had been providing at the Facility.

On December 2, 2002, American sent a letter to UPS informing UPS that it was obligated to comply with the notice and cure requirements in the Agreement and that any attempt to terminate the Agreement would be invalid. American also placed UPS on notice that American was invoking the dispute resolution procedures, arbitration, set forth in the Agreement. On December 3, 2002, Volta contacted American by telephone. Volta refused to withdraw UPS's termination order effective January 1, 2003.

On December 10, 2002, American filed its Complaint in the Circuit Court of Cook County against UPS. American alleged a breach of contract and breach of implied covenant of good faith and fair dealing claim. American sought a temporary restraining order, a preliminary injunction, an award of damages, and to compel arbitration. On December 12, 2002, Judge Thomas P. Quinn ("Judge Quinn") entered an *ex parte* temporary restraining order barring UPS from terminating the Agreement. Shortly thereafter, the case was removed to this Court.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir.2000). Dismissal is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff generally need not plead facts or the elements of a claim. Instead, a plaintiff need only plead the bare minimum facts necessary to put a defendant on notice of the claim so that the defendant can file an answer. *See Swierkiewicz v. Sorema*, 524 U.S. 506, 512 (2002); *Higgs v. Carver*, 286 F.3d 437, 439 (7th

3

Cir. 2002).

UPS first argues that the Complaint should be dismissed because American is not entitled to equitable relief because it has an adequate remedy at law and it has not alleged, and cannot establish, irreparable harm.

A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits, (2) no adequate remedy at law, (3) and that it will suffer irreparable harm if the relief is not granted. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (*Promatek*). Because of the difficulty in assessing the damages associated with a loss of company's goodwill, such damages to goodwill can constitute an inadequate remedy at law. *See Promatek*, 300 F.3d at 813; *Gateway Eastern R.R. Co. v. Terminal R.R. Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994). (*Gateway*). Furthermore, loss of goodwill also qualifies as irreparable harm. *Gateway*, 35 F.3d at 1140; *Cleveland Hair Clinic, Inc. v. Puig*, 968 F. Supp. 1227, 1246 (N.D. Ill. 1996) (potential threat of company's ability to survive constitutes inadequate remedy at law and irreparable injury).

In the instant case, American has pled that it has a reputation for excellent client service that has allowed its market share to grow considerably and that is has never lost a major account to a competitor. American further alleges that UPS's breach of contract and violation of the implied covenant of good faith and fair dealing will cause irreparable harm to American's business reputation, *i.e.*, goodwill. Furthermore, the alleged breach and violation of the implied covenant of good faith and fair dealing will cause American to suffer incalculable damages. At this stage of the litigation, American has sufficiently pled an inadequate remedy at law and an irreparable harm. *See Promatek*, 300 F.3d at 813; *Gateway*, 35 F.3d at 1140.

4

UPS also argues that American's Complaint should be dismissed because American agreed to submit all disputes to arbitration.

The court has discretion to preserve the *status quo* pending arbitration of the parties' dispute via a preliminary injunction. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cunningham*, 736 F. Supp. 887, 889-90 (N.D. Ill. 1990), citing *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348 (7th Cir. 1983). Both parties agree that the Agreement dispute is to be addressed through the dispute resolution and arbitration procedures mandated by the Agreement. However, based on the allegations, UPS planned to terminate the Agreement prior to any resolution through arbitration, causing both economic harm and harm to American's goodwill. Accordingly, the preservation of the *status quo* via a preliminary injunction is appropriate in this case.

For the foregoing reasons, UPS's Motion to Dismiss is denied.

Dated: January 30, 2003

JOHN W. DARRAH
United States District Judge

5